UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CORREY MITCHELL,

Plaintiff,

v.

RONALD BROOMFIELD, et al.,

Defendants.

Case No. 23-cv-06295-JSW

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; DENYING "EMERGENCY" MOTION**

(ECF Nos. 43, 49)

**INTRODUCTION**

Plaintiff, a California prisoner at Salinas Valley State Prison ("SVSP") proceeding pro se, filed this civil rights case under 42 U.S.C. § 1983 against four prison employees: Director of Adult Institutions R. Broomfield, SVSP Warden T. Allen, SVSP Chief Deputy Warden T. Lemon, and Correctional Case Records Analyst E. Scott.  Defendants have filed a motion for summary judgment.  Plaintiff filed an opposition over three months after the deadline, and Defendants filed a reply.  Approximately four months later, Plaintiff filed "objections" to Defendants' Exhibit J, which is excerpts of Plaintiff's deposition, and approximately two months after that, Plaintiff filed an "emergency motion."  Defendants opposed both Plaintiff's objections and motion.  The Court has reviewed and considered all of these filings.[1]  For the reasons discussed below, Defendants' motion for summary judgment is GRANTED, and Plaintiff's motion is DENIED.

**BACKGROUND**

The parties do not dispute the following events.  In 2004, the state court initially calculated Plaintiff's sentence as a term of 191 years-to-life, and several months later recalculated it as a term

---

[1] Plaintiff did not request, receive permission, or show cause to file his opposition, or his objections and "emergency" motion opposing summary judgment, after the deadline.  The Court has nevertheless considered them not to excuse their lateness, but solely in the interest of thoroughness and to demonstrate they do not present grounds for defeating summary judgment.

of 207 years-to-life. That sentence was upheld on appeal in the state courts, and the parties do not dispute it is Plaintiff's correct sentence. In 2016, Defendant Scott, a prison official in the case records department charged with routine auditing or inmate sentences, incorrectly indicated in Plaintiff's prison records that Plaintiff's sentence was 251 years-to-life. In 2022, in response to Plaintiff's administrative grievances, prison officials corrected his prison records to reflect his correct sentence of 207 years-to-life.

When he was sentenced, Plaintiff's Minimum Eligible Parole Date ("MEPD") was calculated as October 29, 2147, and his Elderly Parole Eligibility Date ("EPED") was calculated as March 27, 2032.[2] The parties agree these dates are correct. When Scott calculated Plaintiff's sentence incorrectly, Plaintiff's EPED was not changed. And in 2022, when Plaintiff's records were corrected to reflect his accurate sentence, his MEPD was also restored to the correct date of October 29, 2147.

Plaintiff claims Defendants Scott and Broomfield violated his right to due process and his Eighth Amendment right to be free from cruel and unusual punishment by adding 44 years to his sentence --- from a term of 207 years-to-life to a term of 251 years-to-life. Plaintiff also claims Defendants Allen mishandled and misclassified an administrative grievance, and that Defendant Lemon inadequately responded to one grievance and incorrectly denied another grievance. He claims this violated his right to due process, and also violated his First Amendment rights because Defendants Allen and Lemon were retaliating against him for filing administrative grievances.

**DISCUSSION**

I.   **Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the

---

[2] The EPED applies once an inmate has served 25 years and reached the age of 60.

United States District Court
Northern District of California

nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.* "[S]elf-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001).

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *Tolan v. Cotton*, 570 U.S. 650, 656-57 (2014). A court may not disregard direct evidence on the ground that no reasonable jury would believe it. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) (where nonmoving party's direct evidence raises genuine issues of fact but is called into question by other unsworn testimony, district court may not grant summary judgment to moving party on ground that direct evidence is unbelievable).

A district court may not grant a motion for summary judgment solely because, as here, the opposing party has failed to file an opposition. *See Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994). A verified complaint, such as the operative complaint (ECF No. 1) here, may be used as an opposing affidavit under Rule 56 as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

II.    **Analysis**

1.    Sentence Calculation Claim

Plaintiff claims Defendants Broomfield and Scott violated his right to due process and his Eighth Amendment rights by causing his prison records to erroneously indicate he was sentenced

United States District Court
Northern District of California

3

United States District Court
Northern District of California

to a term of 251 years-to-life, when in fact his sentence is a term of 207 years-to-life. The Court found this claim, when liberally construed, to state a cognizable claim for relief. However, the undisputed evidence, even if viewed in a light most favorable to Plaintiff, establishes there was no violation of Plaintiff's constitutional rights.

Detention beyond the termination of a sentence may constitute cruel and unusual punishment in violation of the Eighth Amendment if prison official knew of and deliberately disregarded a substantial risk that the plaintiff was being incarcerated beyond the lawful termination of his sentence. *Haygood v. Younger*, 769 F.2d 1350, 1354 (1985) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976)). The undisputed evidence supports no reasonable finding that Plaintiff was incarcerated beyond the lawful termination of his sentence. There is no dispute that Plaintiff's earliest parole eligibility date has always been March 27, 2032, so he would not have been released or eligible for release any sooner if Scott had never miscalculated Plaintiff's sentence. As a result, the evidence does not support a reasonable inference the temporary inaccuracy in Plaintiff's prison records caused Plaintiff to remain in prison any longer than lawfully permitted, an essential element of an Eighth Amendment overdetention claim under *Haygood*. Defendants are accordingly entitled to summary judgment on Plaintiff's Eighth Amendment claim.

Plaintiff complains Defendants only corrected his sentence in his records in response to his administrative grievances. The Court is aware of no authority that prison officials violate a prisoner's constitutional rights when they miscalculate a prisoner's sentence as longer than lawfully allowed but correct that miscalculation before it has any impact on the duration of the prisoner's sentence. In the context of prison disciplinary findings, due process requires only procedural correction. *See Raditch v. United States*, 929 F.2d 478, 481 (9th Cir. 1991); *see also Ricker v. Leapley*, 25 F.3d 1406, 1410 (8th Cir. 1994) (holding a prisoner's innocence of the charges does not raise a due process issue because the Constitution demands due process, not error-free decision-making). By analogy, any procedural due process right triggered by the initial miscalculation of Plaintiff's sentence was satisfied when prison officials corrected Plaintiff's records to reflect his actual sentence.

4

United States District Court
Northern District of California

Nor is there any authority of which the Court is aware that Defendants violated Plaintiff's substantive due process rights. "Only official conduct that 'shocks the conscience' is cognizable" as a substantive due process violation. *Porter v. Osborn*, 952 F.3d 1131, 1137 (9th Cir. 2008) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). To determine whether conduct "shocks the conscience," courts employ either a "purpose to harm" standard or a "deliberate indifference" standard. *Id.*

Conduct that "shocks the conscience" is much more egregious than the conduct at issue here, where the inaccuracy in Plaintiff's records was corrected without ever causing Plaintiff to be detained longer than lawfully permitted. *Compare Armendariz v. Penman*, 75 F.3d 1311, 1318 (9th Cir. 1996) (conduct that shocks the conscious a may include interference with personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education, and an individual's bodily integrity); *Scott v. Smith*, 109 F.4th 1215, 1229 (9th Cir. 2024) (use of deadly force); *Sinclair v. City of Seattle*, 61 F.4th 674, 679 (9th Cir. Mar. 1, 2023) (companionship of an adult child); *Chavez v. Martinez*, 538 U. S. 760, 781 (2003) (Souter, J.) (coercive police interrogation tactics); *Gantt v. Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013) (state's fabricating evidence). Also, there is no evidence supporting a reasonable inference Defendants were deliberately indifferent to or purposely caused the inaccuracy in Plaintiff's records. *See Gonzalez v. Anaheim*, 715 F.3d 766, 773 (9th Cir. 2013) (finding no purpose to cause harm, and hence no violation of substantive due process, where officer's use of deadly force was not "excessive or disproportionate to the quickly escalating situation."). The evidence is undisputed that neither Scott nor Broomfield had any contact with Plaintiff and did not know him, that Broomfield did not work in the unit that made the error and had no knowledge of Plaintiff's sentence or Scott's audit, and that Scott's workload was such that she had approximately 45 minutes to audit Plaintiff's highly complex sentence. Although Scott's audit resulted in error, there is no evidence supporting a reasonable inference this error was deliberately indifferent or purposeful.

For the foregoing reasons, Defendants are entitled to summary judgment on Plaintiff's claim that the erroneous sentence temporarily identified in his prison records violated his

5

constitutional rights. [3]

### 2.    Mishandling Grievances Claim

Plaintiff claims Defendants Allen and Lemon mishandled, misclassified, and erroneously decided certain of his administrative grievances. Even if true, such actions do not, as a matter of law, violate his right to due process because there is no due process right to an administrative appeal system in a prison. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

Plaintiff also claims Allen's and Lemon's actions were taken in retaliation for his filing the grievances. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

There is no evidence supporting a reasonable inference that Allen's or Lemon's actions were caused by Plaintiff's protected conduct (i.e. his filing the grievances). To establish causation, a plaintiff must show a nexus between the defendants' adverse action and the plaintiff's protected speech. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000). Plaintiff speculates Defendants had animosity towards him and the grievances, but speculation does not create a triable issue of fact. The assertion that Defendants' handling, classification, and resolution of the grievances violated prison regulations, even if true, does not reasonably support an inference these actions were retaliatory, i.e. caused by Plaintiff's filing of such grievances, as opposed to being the result of Defendants' understanding of such regulations. That Defendants' actions occurred after Plaintiff filed the grievances does not create a triable issue on causation. *See id.* (holding retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this"). As the causation element of Plaintiff's retaliation claim is based upon no evidence reasonably supporting a reasonable finding that Defendants'

---

[3] In light of this conclusion, the Court need not reach the parties' alternate arguments about this claim.

United States District Court
Northern District of California

allegedly adverse actions were caused by Plaintiff's protected conduct, Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

For these reasons, Defendants are entitled to summary judgment on Plaintiff's claim that Allen and Lemon violated his due process and First Amendment rights by mishandling, misclassifying, and improperly deciding his administrative grievances.[4]

3.    Plaintiff's "Objections" and "Emergency" Motion

After briefing on summary judgment was complete, Plaintiff filed "objections" and an "emergency" motion. These papers contain arguments opposing summary judgment, many of which are addressed above.

Additionally, Plaintiff argues summary judgment should be denied because Defendants did not provide him with the full transcript of his deposition.[5] To begin with, Plaintiff cites no authority, nor is the Court aware of any, providing as a general matter defendants are legally obligated to provide a copy of a deposition transcript to a plaintiff proceeding pro se or in forma pauperis. Secondly, Defendants did serve Plaintiff a copy of the portions of the transcript they relied upon to support their summary judgment motion in Exhibit J to their summary judgment motion. Thus, Plaintiff had the opportunity to review and dispute any portion of the deposition transcript Defendants used for their motion. Third, Plaintiff has not shown cause why he could obtain a copy of the rest of the transcript himself.

Plaintiff argues he did not receive notice of the transcript as required by Rule 30(e). Under Rule 30(f)(3), it was not Defendants' obligation to provide such notice; it was the court reporter's obligation. Even if Plaintiff did not receive such notice, as he claims, the remedy is not to deny summary judgment. To begin with, the Court's analysis does not depend on what Plaintiff said in his deposition. Second, Plaintiff knew his deposition was taken and recorded, and if the reporter did not notify him when the transcript was ready to be ordered, he certainly learned of this fact at the latest when he received the transcript excerpts as Exhibit J to Defendants' summary judgment

[4] In light of this conclusion, the Court need not reach Defendants alternate arguments for summary judgment on this claim.
[5] This argument appears

United States District Court
Northern District of California

motion. He offers no explanation of efforts he made, if any, to obtain the transcript from the reporter or why any such efforts failed. The Court is not persuaded that summary judgment should be denied because Defendants did not give him notice or a complete copy of his deposition transcript, which they were not obligated to do.

Plaintiff also asserts several records submitted by Defendants are false or fraudulent. The record contains no evidence of fraud. As explained above, the errors in the state court's initial abstract of judgment and in Plaintiff's prison records were later corrected by the state court and prison officials, respectively.

Plaintiff's "objections" and "emergency motion" do not alter the Court's conclusion that Defendants are entitled to summary judgment.

## CONCLUSION

For the reasons explained above, the motion for summary judgment is GRANTED, and Plaintiff's "emergency" motion is DENIED.

The Clerk shall enter judgment and close the filed.

**IT IS SO ORDERED.**

Dated: March 5, 2026

_____
JEFFREY S. WHITE
United States District Judge

8